cr5-346 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00346-CR







Bobby Joe Putman, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 8323, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING








 A jury convicted Bobby Joe Putman of capital murder. Tex. Penal Code Ann. §
19.03(a)(2) (West 1994). (1) Because the jury found mitigating circumstances, the trial court
assessed punishment at life imprisonment. Putman asserts nine points of error on appeal. He
challenges 1) the admissibility of evidence obtained by an allegedly illegal search, 2) the argument
of counsel, 3) the court's charge, 4) the procedure leading to the admission of DNA evidence, and
5) the sufficiency of the evidence to support part of the jury's verdict. We will affirm the
judgment of conviction.




BACKGROUND


 Pearlie Karcher Reuther disappeared from her job at a convenience store sometime
after noon on April 13, 1993. Within a week of her disappearance, a confluence of evidence
focused the investigation on Putman. Two people who delivered products to Reuther at the
convenience store late the morning of her disappearance noticed an older model black pickup in
the parking lot; one of them remembered a man matching Putman's general description entering
the store. A mail carrier driving her route felt threatened enough that morning by a man driving
a dark, older Dodge pickup near the store that she reported him to her supervisor. After learning
that Putman drove a black 1963 Dodge pickup, the sheriff decided to question him.

 Putman, however, could not be found. His neighbor last saw Putman's truck on
April 13 as it left the trailer house the Putmans shared. On the morning of April 20, Texas
authorities asked colleagues in Colorado to look for Putman in Longmont. The Texas authorities
also decided that day to search Putman's deserted home--a rented trailer house with additions. 
They did not obtain a warrant. However, they obtained consent, not from Putman, but from his
recently estranged wife, Tammy. A deputy sheriff, who had escorted Tammy when she packed
to leave her husband on April 3rd, called her in Brownwood to request consent for the search. 
The search proceeded solely on the strength of her consent.

 The searchers discovered disarray and blood inside the trailer house. They found
a bloody palm print on the wall of the utility room and blood spattered on the floor, toys, and
clothes. In the bathroom, they found a bullet hole in the shower wall surrounded by bloodstains,
a bullet fragment and a .22 caliber bullet cartridge behind the toilet, and bloodstains underneath
the linoleum where it joined the tub. In the attic, they found a blood-stained wastebasket
containing bloody tissue paper and semen stains. A nearby resident who happened by while the
search was occurring revealed that he had bought a .22 rifle from Putman on the afternoon of
April 13, the day of Reuther's disappearance and Putman's departure.

 Meanwhile, Colorado officials had located Putman and were questioning him. 
Putman confessed to killing the convenience store clerk and burying her body behind his house. 
He reaffirmed his confession in writing and on a tape-recorded statement. With his consent,
Colorado officials later searched his pickup, where they found a pair of bloodstained jeans and
bloodstained socks.

 While Putman was confessing in Colorado, the Texas searchers awaited the arrival
of a forensics team to investigate an area of freshly disturbed dirt hidden under some tin behind
the trailer house. There, the team uncovered Reuther's body, clad only in one sock, under
eighteen inches of dirt.

 The medical examiner concluded that Reuther had been dead about a week. He
found three gunshot wounds in the left side of her head and a .22 caliber bullet at the top of her
skull. He saw bruises on her right leg, forearm, wrist, and left arm near the armpit; these injuries
were inflicted within the twenty-four hours before death and were consistent with self-defense. 
He also found a thyroid cartilage fracture that had been inflicted within half an hour of death. 
Though he found no semen in the body, he did not rule out that intercourse had occurred.

 Expert testimony linked evidence found at the scene with Putman and the victim. 
A firearms expert opined that the .22 rifle Putman sold on April 13 fired the cartridge found in
the bathroom. The bloody palm print on the utility room wall matched Putman's palm print. The
blood in the palm print, under the linoleum bathroom floor, and the bloodstains on the trash can
in the attic matched Reuther's rare DNA blood type. The semen stains in the trash can matched
Putman's more common DNA blood type. The bloodstains on the blue jeans and socks found in
Colorado matched the victim's DNA blood type.

 The court submitted a charge that listed three separate "counts" of capital murder
alleged in the indictment. Only the death of Reuther was charged; the three counts alleged three
different offenses committed or attempted in the course of the murder, each of which elevated the
murder charge to capital murder. The jury affirmatively found that Putman murdered Reuther
while committing or attempting kidnapping and aggravated sexual assault, but acquitted him of
murder while committing or attempting robbery. During the penalty phase, the jury found that
Putman posed a continuing threat to society, but also found sufficient mitigating circumstances
to warrant life imprisonment rather than execution. Tex. Code Crim. Proc. Ann. art. 37.071, §
2 (West Supp. 1997). Putman appeals his conviction by nine points of error.



DISCUSSION


Search and seizure

 Putman's first two points of error attack the trial court's rulings regarding the
validity of his wife's consent to the search of their trailer home; he contends that she had no
authority to consent because she had abandoned the home. He contends by point one that the
court erred by refusing to give the jury an instruction on the issue of the validity of the consent. 
He contends by point two that, because his wife lacked authority to consent to the search, the
court erred in overruling his motion to suppress the evidence gained through the search. If we
find any error, we must reverse unless we find beyond a reasonable doubt that the error did not
contribute to the conviction or punishment. Tex. R. App. P. 81(b)(2).

 We will overrule both points because a basis of the trial court's decisions remains
unchallenged on appeal. When overruling the motion to suppress, the trial court ruled not only
that Tammy Putman had authority to consent to the search, but that Bobby Putman lacked standing
to contest the search because he had abandoned the trailer house. Because Putman does not
contest the latter conclusion, the motion to suppress stands on this unchallenged basis. Putman's
uncontested lack of standing to question the lawfulness of a search means that he was not entitled
to a jury instruction on the legality of the search. See Howard v. State, 888 S.W.2d 166, 175
(Tex. App.--Waco 1994, pet. ref'd). Further, his proposed instruction lacked any reference to the
standing issue and he did not mention it in requesting the instruction. We conclude that any error
in the decisions to overrule the motion and refuse the instruction based on Tammy Putman's lack
of authority did not contribute to the conviction and punishment because the unchallenged ruling
that Putman himself lacked standing supports the decisions. We overrule points of error one and
two.



Closing argument

 By point of error three, Putman complains that the court erred by overruling his
objection to the prosecutor's statement in closing argument that, "It is the prosecution's opinion
of the evidence in this case that Mr. Putman, right over there is guilty, guilty, guilty of capital
murder, three times so." Prosecutors may argue their opinions concerning issues in a case if those
opinions are based on evidence and sworn testimony in the record. Penry v. State, 903 S.W.2d
715, 756 (Tex. Crim. App.), cert. denied, 116 S. Ct. 480 (1995). The prosecutor explicitly based
his opinion on the evidence and did not inject or refer to any evidence not in the record. We find
no error and overrule point three.



Court's charge

 By two points of error, Putman challenges the structure of the court's capital
murder charge. He contends by point four that the trial court erred by instructing the jury to
return separate verdicts on each of the three offenses that augmented the murder to capital murder. 
He contends by point five that the judgment incorrectly reflects that he was found guilty on two
separate counts of capital murder. We evaluate charge error under a special standard. We reverse
only if the error was calculated to injure the rights of the defendant or if the defendant was
deprived of a fair and impartial trial. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984); Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981).

 Putman's complaint stems from the court's use of the term "count." The term
"count" normally refers to a single offense. See Tex. Code Crim. Proc. Ann. § 21.24(a) (West
1989). (2) The code allows multiple paragraphs to charge the same offense so long as no paragraph
charges more than one offense. Code § 21.24(b). Putman's complaint arises from the court
referring to the paragraphs charging separate augmenting offenses (e.g. murder in the course of
kidnapping, murder in the course of robbery) as separate counts of capital murder.

 We see no harm to Putman in the court's use of discrete instructions and questions
for each augmenting offense. He insists that the court should have instructed the jury to return
a single guilty verdict rather than three separate verdicts. See Tex. Code Crim. Proc. Ann. art.
37.07, § 1(a) (West 1981) (verdict must be general). Under that proposed submission, the jury's
job would have been easier and Putman's job on appeal much tougher; the jury could have stopped
deliberating after finding him guilty under any of the three theories and, on appeal, Putman would
have had to gain reversal of the verdict on each theory. As submitted, however, the jury, forced
to consider the option as charged, acquitted him on the robbery theory, so Putman needs to gain
reversal on only two of the theories. Because any error in instructing the jury to return separate
verdicts on each of the three augmenting offenses favored Putman, we conclude he could not have
been harmed or deprived of a fair trial and overrule his fourth point of error.

 Nor was Putman harmed by the statement in the judgment that he was found guilty
of two counts of capital murder. That might have affected him at sentencing had he been
sentenced to separate terms on each "count." The trial court, however, stated in its sentence that,
having been convicted of capital murder, he was sentenced to life imprisonment. He received a
single sentence for a single offense, so he was not harmed. We overrule point five.




Scientific testimony

 By two points of error, Putman complains about the procedure leading to the
admission of DNA testimony. He contends by point eight that the trial court erred by not
conducting a hearing outside the presence of the jury regarding the reliability and relevance of the
DNA evidence. By point nine, he complains that the trial court erred by allowing the DNA
evidence because the State did not prove the reliability and relevance of the DNA evidence by
clear and convincing evidence.

 The trial court's failure to hold a hearing outside the presence of the jury, though
erroneous, was not necessarily reversible. Trial courts should hold a hearing outside the presence
of the jury to determine whether novel scientific evidence is admissible. Kelly v. State, 824
S.W.2d 568, 573 (Tex. Crim. App. 1992). The court must decide whether the scientific evidence
is reliable and relevant to determine admissibility. Jordan v. State, 928 S.W.2d 550, 554-56
(Tex. Crim. App. 1996). Relevant evidence is admissible unless its probative value is
substantially outweighed by the risk of unfair prejudice, confusion, or misleading the jury. Tex.
R. Crim. Evid. 403; Campbell v. State, 910 S.W.2d 475, 478 (Tex. Crim. App. 1995). Hearing
the evidence of reliability in front of the jury is error. Brown v. State, 881 S.W.2d 582, 588
(Tex. App.--Corpus Christi 1994, no pet.). Because the hearing is meant to shield the jury from
hearing inadmissible evidence, however, the error may be harmless and not reversible if the
evidence proves to be admissible or its admission is otherwise not harmful. Id.

 To show the requisite reliability and admissibility, the proponent must show that
the underlying scientific theory is valid, that the technique to apply the theory is valid, and that
the technique was properly applied in the particular case. Kelly, 824 S.W.2d at 573. Factors in
this determination include the extent to which the theory and technique are accepted by the
relevant scientific community, the qualifications of the testifying expert, the existence of literature
regarding the theory or technique, the potential rate of error of the technique, the availability of
other experts to test and evaluate the technique, the clarity with which the underlying theory and
technique can be explained to the court, and the experience and skill of the person who applied
the technique. Id. The expert's testimony in this case supplied some of the necessary elements,
but lacked others; the deficiencies were serious enough to make the decision of whether the trial
court abused its discretion in admitting the evidence very close.

 We need not conduct that analysis, however, because the non-DNA evidence
supporting guilt is so overwhelming. Foremost, the record contains Putman's multiple
confessions. The transcript of his tape-recorded confession confirms details of other witnesses'
testimony and contains incriminating evidence such as the time Putman went to the convenience
store, who else was there when he arrived, his driving home from the store with Reuther, the
nature of the murder scene, his sale of the rifle used in the murder, the backyard burial, and the
time he left the house. The record also contains testimony placing Putman's vehicle at the
convenience store, the discovery of Reuther's body behind Putman's mobile home, bloodstains
(including Putman's bloody palm print) in the mobile home, evidence that the fatal shots came
from a firearm he owned at the time, and evidence of his immediate flight from the area. We
believe that the overwhelming evidence of guilt dissipated the effect of any error regarding the
admission of the DNA evidence, and therefore conclude beyond a reasonable doubt that the DNA
evidence did not contribute to Putman's conviction and sentence. Harris v. State, 790 S.W.2d
568, 587 (Tex. Crim. App. 1989); Tex. R. App. P. 81(b)(2). We overrule points eight and nine.



Sufficiency of the evidence

 By two points of error, Putman complains of the factual and legal sufficiency of
the evidence to support the conviction for committing murder while attempting or committing
aggravated sexual assault. We need not delve deeply into these points because the capital-murder
guilty verdict is sustainable on an alternate theory. When a jury returns a general verdict of guilty
upon submission of multiple theories of the commission of a single offense, a reviewing court that
finds sufficient evidence to support the verdict under one theory need not continue and analyze
whether sufficient evidence supports any other theory of the commission of the same offense. 
Aguirre v. State, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (on reh'g). The jury's guilty
verdicts on two theories of capital murder--murder in the course of kidnapping and murder in the
course of aggravated sexual assault--make the verdict analogous to a general guilty verdict on
submission of alternative theories. Putman does not challenge the jury finding that he is guilty
of capital murder in the course of kidnapping. Because that verdict provides an independent basis
to affirm the conviction for capital murder, we need not examine the sufficiency of the evidence
to support the verdict on the aggravated sexual assault charge. We overrule points six and seven.




CONCLUSION


 Finding no error, we affirm the judgment of conviction.



 

 Mack Kidd, Justice

Before Justices Aboussie, Kidd and B. A. Smith

Affirmed

Filed: January 9, 1997

Do Not Publish
1.   Though the Penal Code has been revised since the offense in this case occurred,
none of the changes altered this subsection. We will cite the current code for
convenience.
2.   Though this section of the code addresses indictments rather than jury charges, it
appears to be the statutory source of the use of the terms "count" and "paragraph" in the
context of the jury charge.



e qualifications of the testifying expert, the existence of literature
regarding the theory or technique, the potential rate of error of the technique, the availability of
other experts to test and evaluate the technique, the clarity with which the underlying theory and
technique can be explained to the court, and the experience and skill of the person who applied
the technique. Id. The expert's testimony in this case supplied some of the necessary elements,
but lacked others; the deficiencies were serious enough to make the decision of whether the trial
court abused its discretion in admitting the evidence very close.

 We need not conduct that analysis, however, because the non-DNA evidence
supporting guilt is so overwhelming. Foremost, the record contains Putman's multiple
confessions. The transcript of his tape-recorded confession confirms details of other witnesses'
testimony and contains incriminating evidence such as the time Putman went to the convenience
store, who else was there when he arrived, his driving home from the store with Reuther, the
nature of the murder scene, his sale of the rifle used in the murder, the backyard burial, and the
time he left the house. The record also contains testimony placing Putman's vehicle at the
convenience store, the discovery of Reuther's body behind Putman's mobile home, bloodstains
(including Putman's bloody palm print) in the mobile home, evidence that the fatal shots came
from a firearm he owned at the time, and evidence of his immediate flight from the area. We
believe that the overwhelming evidence of guilt dissipated the effect of any error regarding the
admission of the DNA evidence, and therefore conclude beyond a reasonable doubt that the DNA
evidence did not contribute to Putman's conviction and sentence. Harris v. State, 790 S.W.2d
568, 587 (Tex. Crim. App. 1989); Tex. R. App. P. 81(b)(2). We overrule points eight and nine.



Sufficiency of the evidence

 By two points of error, Putman complains of the factual and legal sufficiency of
the evidence to support the conviction for committing murder while attempting or committing
aggravated sexual assault. We need not delve deeply into these points because the capital-murder
guilty verdict is sustainable on an alternate theory. When a jury returns a general verdict of guilty
upon submission of multiple theories of the commission of a single offense, a reviewing court that
finds sufficient evidence to support the verdict under one theory need not continue and analyze
whether sufficient evidence supports any other theory of the commission of the same offense. 
Aguirre v. State, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (on reh'g). The jury's guilty
verdicts on two theories of capital murder--murder in the course of kidnapping and murder in the
course of aggravated sexual assault--make the verdict analogous to a general guilty verdict on
submission of alternative theories. Putman does not challenge the jury finding that he is guilty
of capital murder in the course of kidnap